JOSÉ CORDERO, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent; BULL INSULAR LINE, Employer.

No. 379.   Argued January 13, 1948.—Decided January 30, 1948.

*Víctor M. Bosch* for petitioner's beneficiaries. *Ángel de Jesús Matos, M. Maldonado Pacheco,* and *Aída Casañas Marengo* for the State Insurance Fund.

Mr. Justice Marrero delivered the opinion of the Court.

On August 20, 1945, José Cordero Pérez worked as gangwayman (*"amantero"*) on a steamer which was close to one of the piers of the Bull Insular Line in San Juan. At about 10:00 p. m. he had to help other workmen to place a heavy plate (*galeota*) over the ship's hatchway. Suddenly Cordero Pérez felt sick and died before he was taken to the hospital. His beneficiaries submitted a claim to the Manager of the State Insurance Fund, who denied it. Subsequently, the Industrial Commission rendered a decision dismissing the claim and affirming the decision of the Manager in all its parts. A reconsideration sought was denied, and the beneficiaries thereupon instituted a proceeding in this Court pursuant to § 11 of Act No. 45 of April 18, 1935 (Laws of 1935, pp. 250, 288), as amended by Act No. 121 of May 2, 1940 (Laws of 1940, p. 728).

In their petition they urge that (A) "The Industrial Commission erred in holding that in this case there is no proof of the extraordinary effort which is contemplated by the decisions of our highest tribunal, as well as those of the American courts, in connection with our Workmen's Accident Compensation Act, in order to render this accident compensable;" (B) " . . . in taking into consideration, as a basic and essential element, the idiopathic condition of the workman for determining the degree or character of the effort made by him, that is, in order to determine whether the workman exercised an extraordinary effort which might establish a causal connection with his death"; and (C) " . . . in holding that the death of José Cordero Pérez did not occur as a consequence of an industrial accident." They cite in support of their contentions the decisions in *Montaner, Mgr.* v. *Industrial Com-*

mission, 57 P.R.R. 320; *Montaner* v. *Industrial Commission,* 55 P.R.R. 867; *Montaner* v. *Industrial Commission,* 54 P.R.R. 113; and *Montaner* v. *Industrial Commission,* 54 P.R.R. 757. We shall discuss jointly the errors assigned.

An examination of the above-cited cases, as well as those of *Montaner* v. *Industrial Commission,* 54 P.R.R. 686; *Montaner, Mgr.* v. *Industrial Commission,* 53 P.R.R. 187; and *Paris* v. *Industrial Commission,* 52 P.R.R. 427, which are somewhat similar to them, does not convince us that the decision of the Industrial Commission should be reversed. It is true that some of those cases give the impression that the death of a workman, which occurs in the course of his employment, is compensable when, taking into consideration his idiopathic condition, the work performed by him at the moment of his death is tantamount to an effort. However, if those decisions are carefully examined, it will be seen that in them this Court took into consideration, not only the physical condition of the workman, but also the kind of work performed and the effort exercised by him at the time of his death, and that in view of the attendant circumstances, said effort could be considered as extraordinary.

According to the evidence introduced in this case, on the evening of the day aforesaid, the decedent worked as gangwayman on the deck of one of the ships of the Bull Insular Line. His work consisted principally in shouting warnings to the workmen who stood on the wharf, in order that they should be prepared to receive the cargo. He worked from 4: 00 to 6: 00 p. m., when he went out to eat, and at 7: 00 p. m. he resumed his work. At about 10: 00 p. m. the overseer told him that he had to help six other workmen to place a covering or plate over the hatchway in which the work was performed. The plate (*galeota*) weighed over a ton and was hoisted by means of a mechanical apparatus and, when it reached a point 10″ or 12″ above the hatchway it was pushed directly over the latter and then lowered to its proper place.

While said seven workmen and the overseer pushed the covering plate the deceased workman felt sick and shortly thereafter died.

One of the witnesses for the beneficiaries testified before the Commission that Cordero Pérez did not have to make any effort; but the overseer, also called by them, testified that Cordero Pérez usually performed that kind of work, that he had to execute it in addition to his duties as gangwayman and that, in his judgment, Cordero Pérez had to make an effort, indicating also that he had to give a hand "because there are men who really have no strength."

In order to decide the case we must consider not only the above evidence, but also the testimony of the medical experts who testified therein. Dr. Jesús M. Quiñones stated that the probable cause of the death was "pathology, coronary arteries" and that according to his diagnosis the deceased suffered from advanced stenosis of the coronaries, due to arterio-esclorosis and pulmonary edema"; that "the pathological cause did not need any extraordinary effort to produce his death, because it could have by itself caused the death of the workman without his having made any extraordinary effort"; that his disease was in such an advanced stage, his arteries were in such a condition, that he was bound to die at any time; he might have died in his sleep or sitting down." Dr. Jeramfel Cordero stated that the immediate cause of Cordero Pérez's death was "acute pulmonary edema, but secondary to the stenosis of the coronary arteries"; that in these cases death occurs in various circumstances ranging from absolute rest during the night to the relaxation produced by the digestion of an abundant meal. He also testified that if the load had to be moved by six workmen over a flat surface to a different place, he considered that it would be an extraordinary effort; but it would be otherwise if the load was moved while hanging in the air, as he considered that the strain could not then be classified as extraordinary.

In view of the foregoing testimony of Dr. Cordero, the witness Tomás López was again called to testify. With his testimony it was finally cleared that at the time the workman Cordero Pérez felt the pain which preceded his death, he was pushing, together with seven other men, the plate which was suspended in the air.

The Industrial Commission weighed the evidence and reached the conclusion that the deceased workman did not make any extraordinary effort at the time of the accident which brought about his death. In so doing it found that the accident was not compensable.

■■ In our opinion, the Commission correctly interpreted our decisions. In cases of this kind, it is not sufficient that the death of the workman be caused by an accident which, given his idiopathic condition, is tantamount to strain. In order that the accident be compensable it is necessary that the effort be an extraordinary or unusual one.

As stated by the textwriter Schneider in his treatise "Workmen's Compensation," 3d edition, vol. 4, § 1240, p. 386, in many States it is held that "compensation will not be awarded where the employee has chronic heart trouble which has reached such a stage that death is liable to ensue at any time, from any exertion, and death comes while he was doing the ordinary work of his employment." See also §§ 1302 and 1332, pp. 468, 473, 569 et seq. of the same treatise.

In Balaban v. Severe, 43 Atl. (2d) 543 (Pa. 1945), it was decided, copying from the syllabus, that "To constitute a compensable 'accident' it must be shown that the work in which the employee was engaged at the time of the occurrence was of a different nature and required a materially greater amount of exertion, risk or exposure than that to which he was ordinarily subjected, so as to justify a conclusion that increased severity of work was the cause of, and not merely coincidental with, the previously existing infirmity." See also Hamer v. Rishel, 24 Atl. (2d) 664 (Pa. 1942), and Rowe v.

*Goldberg Film Delivery Lines,* 72 Pac. (2d) 432 (Arizona 1937). We agree with the views set forth above.

Since the respondent Commission did not commit any of the errors assigned, the decision under review should be affirmed.